UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 09-159-DLB

ANN M. GRIFFITH, Personal Representative/Administratrix of
the Estate of Grant A. Griffith, Deceased                              PLAINTIFF

vs.                    **MEMORANDUM OPINION AND ORDER**

DONALD S. KUESTER, ET AL.                                             DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Ann M. Griffith, individually and as Administratrix of the Estate of Grant A. Griffith, commenced this action against Defendants Donald and Cathleen Kuester after a tragic boating accident on Lake Williamstown in Grant County, Kentucky wherein Grant Griffith was killed after being struck by the Kuester's motorboat. Plaintiff alleges violations of common law and statutory negligence. This Court's jurisdiction is based on diversity and therefore Kentucky law controls.

This matter is currently before the Court on Defendant Donald Kuester's Motions for Partial Summary Judgment as to Mr. Kuester's vicarious liability pursuant to the Family Purpose Doctrine and City of Williamstown, KY Ordinance 2008-17, (Docs. #20, 21), Plaintiff's Cross Motion for Partial Summary Judgment as to Mr. Kuester's vicarious liability pursuant to the Family Purpose Doctrine, (Doc. #28), and Plaintiff's Motion for Partial Summary Judgment as to Defendant Cathleen Kuester's common law and statutory negligence (Doc. #31). Oral argument was held on October 22, 2010, on all four motions.

1

Mark H. Verwys and Sandra J. Densham appeared on behalf of the Plaintiff, and Duane R. Skavdahl and Lindsay Allison Smith appeared on behalf of the Defendants. The matter is now ripe for review.

For the reasons set forth below, because the family purpose doctrine and the Williamstown Ordinance are inapplicable to the present case, Defendant Donald Kuester's Motion for Partial Summary Judgment regarding the family purpose doctrine (Doc. #20) and Motion for Partial Summary Judgment regarding the City of Williamstown, KY Ordinance (Doc. #21) are hereby **GRANTED**. For the same reasons, Plaintiff's Cross Motion for Partial Summary Judgment (Doc. #28) is **DENIED**.

Moreover, despite evidence that Mrs. Kuester's July 3, 2009 operation of the Mastercraft may have violated several Kentucky statutory and regulatory provisions with respect to her duty of care, because there are genuine issues of material fact regarding whether that purported breach was the proximate cause of Mr. Griffith's death, Plaintiff's Motion for Partial Summary Judgment as to Mrs. Kuester's common law and statutory negligence claim (Doc. #31) is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Donald and Cathleen Kuester owned a waterfront home on Lake Williamstown in Grant County, Kentucky. They also jointly owned a 2002 MasterCraft 205 VRS Motorboat (MasterCraft). The Kuesters used this boat for the pleasure and enjoyment of their family and friends, including entertaining Mr. Kuester's employees at an annual party. The MasterCraft was only driven by the Kuesters and their two sons. Mrs. Kuester frequently drove the boat and estimated that she had driven it hundreds of hours prior to the July 3,

2009 accident.

On the Fourth of July weekend, the Kuesters generally held an open invitation for friends and family to visit the lake house. On July 2 and 3, 2009, several family and friends took advantage of the Kuester's hospitality, including their son Matthew and daughter-in-law Jenny and their two children; Angela and Joel Ash and their three children; Gary and Cynthia Hassman; and Jeremy and Amber Hassman and their two children. However, Mr. Kuester had to work that weekend in Cincinnati and was not at the lake house at any time prior to the accident. Mr. Kuester was aware that Mrs. Kuester drove the boat in his absence and never told her that he did not want her driving the boat when he was not present. Mrs. Kuester did not need Mr. Kuester's permission to drive the boat.

On July 3, 2009, sometime after lunch, Mrs. Kuester invited her guests to go out onto the MasterCraft. The younger kids wanted to go tubing, so Mrs. Kuester began pulling passengers in a loop around the lake. Just prior to the accident, Mrs. Kuester was pulling Joel Ash and his daughter on one of the tubes. Cindy Hassman, Amber Hassman, and Angela Ash were passengers in the MasterCraft at that time, along with four Hassman and Ash children.[1] The MasterCraft was traveling in a west to east direction on the south side of the lake, going just above idle speed, for the comfort level of the young tuber.[2] Mrs. Kuester did not look at her speedometer at the time, but estimated that the boat was

---

[1] All passengers were sitting either to the side of or behind Mrs. Kuester; there was no one sitting in front of the driver's seat in the bow of the boat.

[2] Williamstown Lake is a fairly narrow lake, so the normal course of boats is to travel east to west on the north side of the lake and west to east on the south side of the lake.

3

traveling at approximately five to ten miles per hour.[3] This speed, in between idling and planing,[4] caused the bow of the boat to be up and created a blind spot directly in front of the boat.[5]

At about the same time, Mr. Griffith was also on Williamstown Lake with four friends, Jacob Young, Mike Packard, Chad King and J.P. Milburn. After spending some time swimming and talking in the cove, the men boarded Young's 1981 Celebrity sterndrive boat (Celebrity) to go pick up Young's sister who was waiting at Ruby's Boat Dock. Packard and Griffith wanted to water ski, so Young decided to tow them on the way over to his sister.[6] The path of the Celebrity was also west to east. Packard went first and, after falling twice, got back in the boat. Then Griffith asked if he could go because he had not been water skiing since he was a small child. His first time up, Griffith only made it about five or ten feet before falling over. Young then looped the Celebrity back around Griffith to give him the tow rope.[7] Young got the Celebrity back facing east and straightened out to the point where the rope was just about taut, ready to pull Griffith out the water again. At that time, Milburn noticed a boat with its bow raised up, the MasterCraft, coming straight at Griffith. At this point, there are several factual disputes as to how the ensuing accident unfolded.

---

[3] Joel Ash also estimated that the boat was traveling at a speed of approximately five to ten miles per hour. He stated it was slow enough where he could carry on a conversation with his daughter and was not holding on very tightly. Cindy Hassman estimated the speed at approximately ten miles per hour. Independent eye witness, Charlotte Brinneman, who witnessed the accident from a few hundred yards away, said the MasterCraft was "speed[ing] toward" Mr. Griffith, meaning it "wasn't no wake, it was going."

[4] This is also known as transition mode.

[5] Mrs. Kuester testified at her deposition: "I could see beyond a certain point over the bow, not directly in front." (Doc. #25 at 109).

[6] Prior to driving the boat, Young had two Bud Lights.

[7] The average tow rope for water skiers is seventy-five feet long.

According to the passengers in the Celebrity, the MasterCraft was traveling in a straight line towards Griffith and the Celebrity, and, had Griffith not been in the water, the Celebrity would have been struck by the MasterCraft. Despite this assertion, the location of the Celebrity via-a-vis the Mastercraft is called into question by several of the witnesses' testimonies. First, it is undisputed that the MasterCraft was traveling on the south side of the lake at the time the incident occurred.[8] If the MasterCraft was traveling in a straight line directly behind the Celebrity, the Celebrity would also have been traveling on the south side of the lake. However, Packard, a Celebrity passenger, testified that the Young boat was in the middle of the lake and closer to the north side when they were ready to pull Griffith up for the second time. The only independent witness, Charlotte Brinneman, also testified that the Young boat was in the middle of the lake and off to the left side of Griffith and the MasterCraft. She explained that the Young boat was at approximately 9:00 to 10:00 o'clock when compared to the MasterCraft. While she only saw the event unfold in a matter of seconds, her testimony establishes that the Young boat was not directly in front of the MasterCraft at some point before the accident occurred. Furthermore, Mrs. Kuester testified that the boat was never in front of her. Although she acknowledged she could not see directly in front of the boat because the bow was raised.

Two of the passengers in the Celebrity estimated the total time that elapsed from when they saw the MasterCraft until it hit Griffith was approximately fifteen to thirty seconds. It is undisputed that the bow of the MasterCraft was raised due to the slow speed

---

[8] This testimony is corroborated by Celebrity passengers as well. Young testified that the MasterCraft could have avoided the collision by going around the Celebrity on the left (north) side. However, Young also testified that the MasterCraft could not have passed on the right (south) side because it would have been too close to the docks. This testimony indicates the MasterCraft was traveling in the normal lane of traffic, heading west to east on the south side of the lake.

it was traveling. However, there appears to be an issue as to how high the bow was in the air. While Milburn testified that the bow was at a forty-five degree angle, so high that he could not see any passengers in the boat, King testified that he could see three heads in the boat. The undisputed testimony also reveals that the MasterCraft never changed its course prior to hitting Mr. Griffith. Mrs. Kuester testified that she always utilized the fold-up bolster, meaning that the front part of the seat was raised so the operator has better visibility. While Mrs. Kuester indicated in her deposition that she was sitting in the driver's seat at the time of the accident, Cindy Hassman testified that Mrs. Kuester had one knee on the seat and was in a standing position.

Once the passengers on the Celebrity saw the MasterCraft heading towards them, they all began to frantically wave their arms and yell. However, Mrs. Kuester and the passengers on the MasterCraft never heard their cries until about the same time, or just after, the boat had already struck Griffith. Young testified that jet skiers also stopped to yell at the MasterCraft passengers, but Milburn testified that he never saw anyone else on the water or docks attempt to warn them.

Once Young realized that the MasterCraft was not stopping, he attempted to pull Griffith out of the way. Young testified at his deposition that he turned the boat north (to the left) and pulled Griffith approximately four to five feet. Despite this attempt, Griffith went under the left side of the MasterCraft. Young also testified that when he pulled Griffith, "he [Griffith] was taking on so much water ... all you could see was his hand waving when he came up, he looked and ducked his head, that's all you seen of him." (Doc. #43 at 22). Young's deposition testimony regarding his attempt to pull Griffith out of the way is called into question by the other Celebrity passengers' testimonies and Young's own written

6

statement from the day of the accident. On the day of the accident, Young testified that he pulled Griffith ten feet (as opposed to four or five). King does not even mention this maneuver in his deposition. Packard says Griffith was not moved at all because it was simultaneous to the collision with the MasterCraft, and he testified that Young moved to the south rather than the north. Milburn testified that Young pulled Griffith forward but only a foot or two.

A split second prior to the collision, Griffith turned his head to the left in time to see the onrushing MasterCraft; he ducked just before the bow of the boat hit him. When Mrs. Kuester heard and felt the collision with Griffith, she immediately put the boat in neutral to see what she had hit. Griffith surfaced behind the MasterCraft and in front of the tube that Joel Ash and his daughter were riding on. Ash jumped off the tube and swam over to Griffith, who, for a short period of time, was gasping for breath. Griffith died shortly thereafter in the water. All of the passengers on the MasterCraft testified that the Celebrity boat was on the opposite side of the lake, to the left of them, after the collision.

## II.     ANALYSIS

### A.     Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

7

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### B. Defendant Donald Kuester's Liability Under the Family Purpose Doctrine

In the Second Amended Complaint, Plaintiff alleges that pursuant to the "Family Purpose Doctrine," Mr. Kuester, as owner of the MasterCraft, is jointly and severally liable for Mr. Griffith's death and the estate's damages. The family purpose doctrine evolved from a Kentucky court decision in 1864 and was clearly established with respect to automobiles in *Stowe v. Morris*, 144 S.W. 52 (1912). *Keeney v. Smith*, 521 S.W.2d 242, 242-43 (Ky. 1975). The rationale for the doctrine was "when the owner of an automobile furnishes it for

the use and enjoyment of the members of his family, the members of the family so using the automobile with the consent of the owner become his agent in carrying out his purpose." *Id.* at 243. *See also Sale v. Atkins*, 267 S.W. 223, 224 (Ky. 1924). In addition to agency principles, Kentucky courts have found that the doctrine is also premised on "justice or supposed necessity or humanitarian principles designed to protect the public." *First-City Bank & Trust Co. v. Doggett*, 316 S.W.2d 225, 229 (Ky. 1958) (internal citations and quotations omitted). As a matter of public policy, the parent, who not only made the vehicle available for use but is also the only financially responsible party, should bear the liability for the plaintiff's injuries. *Id. See also Richardson v. True*, 259 S.W.2d 70, 71 (Ky. 1953) (recognizing the doctrine was designed to protect the public generally because "in most cases an infant does not have sufficient property in his own right to indemnify one who may suffer from his negligent acts"). Pursuant to K.R.S. § 235.300, the family purpose doctrine is also "applicable to the use and operation of vessels or motorboats."

In order to recover under the doctrine, the plaintiff must prove: (1) that the vehicle was owned or controlled by the defendant; (2) that the vehicle was maintained by the defendant for the use and benefit of members of his family; (3) that the vehicle was being used at the time of the incident by a person whom the defendant was under a legal obligation to support; and (4) that the person using the vehicle was doing so pursuant to a family purpose. *Taylor v. Rawls*, 274 S.W.2d 50, 51 (Ky.1954), *overruled in part by Keeney*, 521 S.W.2d 242 (*Keeney* restricted the third element and held that the doctrine only applied when the owner had a legal obligation of support. Any cases indicating a moral obligation to support as sufficient to apply the doctrine were overruled.). The basic premise of the doctrine is that the head of the family will be responsible for an accident

while the vehicle is being driven within the scope of the family purpose. *Rauckhorst v. Kraut*, 287 S.W. 895, 896 (Ky. 1926). Therefore, this requires that the vehicle be used with consent, express or implied, and for the purposes intended. *Sale*, 267 S.W. at 224. The "family purpose" has been defined as including the "convenience, pleasure, or benefit" of the family. *Wireman v. Salyer*, 336 S.W.2d 349, 351 (Ky. 1960).

In the present case, Mr. and Mrs. Kuester are joint owners of the MasterCraft. They both signed the purchase agreement and have continuously operated the boat without first obtaining the other's permission. Plaintiff has failed to offer any evidence negating the joint ownership or that one spouse exercises a certain degree of control over the other's use of the boat. The Kuesters purchased the MasterCraft for the pleasure and enjoyment of their family and friends, and it is clear that Mrs. Kuester was operating the boat within the scope of this purpose on the day of the accident. Plaintiff argues that is all that is required to hold Mr. Kuester liable under the family purpose doctrine. The Court disagrees.

The Kentucky Supreme Court has never ruled on whether a co-owner of a vehicle can be held liable for the other co-owner's negligent operation pursuant to the family purpose doctrine.[9] In fact, few jurisdictions have even addressed the issue, and a split of authority exists in the very few cases that have addressed it. *See Sheppard v. Weekly*, 695 P.2d 53, 56 (Or. Ct. App. 1985) (holding that when husband and wife are co-owners and enjoy equal rights to use and control a vehicle, the husband cannot be held liable pursuant to the family purpose doctrine for the wife's negligent operation of the vehicle); *Rushing v.*

---

[9] Plaintiff cites *N.Y. Indemnity Co. v. Ewen*, 298 S.W. 182 (Ky. 1927) to argue that the court indicated it would apply the family purpose doctrine to impose liability on a spouse arising from co-ownership of a vehicle being operated by the other spouse. However, in *Ewen*, the court never reached the issue because the plaintiff failed to plead or present any proof concerning the application of the doctrine. *Ewen*, 298 S.W. at 182-83.

*Poke*, 128 S.E.2d 675, 680 (N.C. 1962) (holding that the family purpose doctrine does not apply to husband and wife joint owners, without proof of actual agency between them). *But see Marcus v. Everett*, 239 N.W.2d 487, 493 (Neb. 1976) (holding that the family purpose doctrine did apply to husband and wife joint owners, because husband contributed the use of his half of the vehicle and therefore furnished the vehicle to his wife, a member of his family).

Plaintiff cites several Kentucky cases for the proposition that an owner-spouse can be held liable pursuant to the family purpose doctrine. However, these cases are easily distinguishable from the present case. In *Kennedy v. Wolf*, 298 S.W. 188 (Ky. 1927), the wife and owner of a vehicle was deemed not liable under the family purpose doctrine for the negligence of her husband, because the court found that at the time of the accident the husband had been engaged in his own business rather than serving a family purpose. *Kennedy*, 298 S.W. at 189. Plaintiff asserts that had the husband been engaging in a family purpose, the wife would have been held liable. Despite Plaintiff's assertion, this case offers little guidance to the Court as the spouses were not joint owners of the vehicle.

Likewise, Plaintiff's reliance on *Wireman v. Salyer*, 336 S.W.2d 349 (Ky. 1960) is also misplaced as that case did not involve co-owner spouses. In *Wireman*, the defendant-owner's wife instructed the defendant's adult son to drive her to Winchester to pick up a check for the sale of their tobacco crop. *Wireman*, 336 S.W.2d at 350. The defendant expressly consented to the use of the vehicle for the trip and therefore liability was based upon a finding of actual agency. *Id.* However, the Court went on to explain that defendant could also have been found liable pursuant to the family purpose doctrine as defendant's wife- who was clearly within the scope of the doctrine- directed the adult son to operate the

11

truck on this occasion. *Id.* at 350-51. However, defendant and his wife did not jointly own the vehicle in question, unlike the defendants in the present case.

Plaintiff also cites *Gray v. Golden*, 192 S.W.2d 371 (Ky. 1945) to support the application of the family purpose doctrine. In *Gray*, the court imposed liability under the doctrine against an owner-husband arising from his wife's negligent operation of the vehicle. *Gray*, 192 S.W.2d at 375. The vehicle had, in fact, been titled in the wife's name. *Id.* However, the husband purchased the vehicle and gave it to his wife, and he continued to pay for all of the gas and oil used and whatever repairs were necessary. *Id.* Given that the underlying principle of the doctrine is that of principal and agent, the Court found that the doctrine applies to one who exercises control over the vehicle rather than the one who holds bare legal title. *Id.* Once again, the facts of *Gray* are clearly distinguishable from the present case as the Kuesters both purchased the boat and did not exercise any dominion or control over the other's use of the boat.

During oral argument, Plaintiff's counsel asserted that the only element that must be satisfied in order to apply the family purpose doctrine is that the vehicle, or boat in this instance, was being operated pursuant to a family purpose at the time of the accident. However, if that were indeed the case, injured parties would seek to invoke the doctrine far more often than the case law reveals. More importantly, applying the doctrine in the manner espoused by Plaintiff would ignore the other elements which have been required to apply the doctrine. Furthermore, a review of the case law finds that Kentucky courts have limited the application of the doctrine. For instance, a parent and owner of a vehicle provided for family purposes is not liable for the negligent operation of an adult child whom the parent is under no legal obligation to support. *McNamara v. Prather*, 127 S.W.2d 160,

12

160 (1939).

While Kentucky courts have been silent on the specific issue before the Court, they have repeatedly applied the family purpose doctrine based on principles of agency and equity, a point seemingly lost on Plaintiff's counsel. *Keeney*, 521 S.W.2d at 243; *Sale*, 267 S.W. at 224. Additionally, the courts have emphasized that the defendant must exercise some degree of control over the vehicle. *See e.g., Gray*, 192 S.W.2d at 375. Therefore, the Court finds that the doctrine is inapplicable to the instant case. Co-ownership, in and of itself, refutes an agency theory. As co-owners of the MasterCraft, neither spouse had greater rights to the boat to the exclusion of the other. Therefore, Mr. Kuester could not have either given permission to or denied use of the boat that Mrs. Kuester legally owned. As such, Mr. Kuester did not furnish the boat to Mrs. Kuester to bring the incident within the recognized scope of the family purpose doctrine.

Plaintiff's argument that the doctrine should be invoked because the damages exceed seven figures is not a proper issue for the Court's consideration. Given that Plaintiff seeks damages exceeding five million dollars, even a judgment against both Mr. and Mrs. Kuester will not make Plaintiff whole. The family purpose doctrine was designed as an equitable remedy to ensure plaintiffs some level of recovery when there otherwise would have been none. However, the doctrine was not designed to ensure that a plaintiff receive the best recovery possible. Dismissing Mr. Kuester from liability does not conflict with the humanitarian principles of the doctrine, as Mrs. Kuester is clearly a financially viable defendant. If a judgment is obtained against Mrs. Kuester, Plaintiff may execute that judgment in whatever form is permissible under the law. Accordingly, Defendant Donald Kuester's Motion for Partial Summary Judgment regarding the family purpose doctrine

(Doc. #20) is **granted**.

### C. Defendant Donald Kuester's Liability Under the City of Williamstown, KY Ordinance 2008-17

Plaintiff also alleges that pursuant to the City of Williamstown, KY Ordinance 2008-17, Mr. Kuester, as owner of the MasterCraft, is jointly and severally liable for Mr. Griffith's death and the estate's damages because he authorized or permitted Mrs. Kuester to operate their motorboat in violation of the ordinance. City of Williamstown, KY Ordinance 2008-17 provides, in pertinent part:

> § 95.09(C)(1): A ... motorboat operated on Lake Williamstown shall at all times be operated according to the "Rules of the Road" and in a reasonable and prudent manner so as not to endanger human life, human physical safety, or property. A person shall not do any of the following while operating a ... motorboat on Lake Williamstown:
> ...
> > (b) Follow a watercraft that is towing an individual on water skis ... in a way that endangers human life, human physical safety, or property;
> ...
> § 95.09(E): Any person who owns a motorboat ... or who has charge over, or control of a motorboat ... shall not ... authorize or permit the motorboat ... to be operated in violation of this section.

Specifically, Plaintiff alleges that Mr. Kuester authorized or permitted Mrs. Kuester to operate the MasterCraft in violation of § 95.09(C)(1). However, the record is simply devoid of any evidence that Mr. Kuester authorized or permitted Mrs. Kuester to operate the boat in a way that endangers human life, human physical safety, or property. In response to Defendant Donald Kuester's Motion for Partial Summary Judgment (Doc. #21), Plaintiff appears to abandon this allegation and merely argues that Mr. Kuester is liable for Mrs. Kuester's violation of the ordinance pursuant to the family purpose doctrine. For the reasons stated above, Mr. Kuester is not liable pursuant to the family purpose doctrine.

14

Given the absence of a genuine issue of material fact as to whether Mr. Kuester authorized or permitted Mrs. Kuester to operate the MasterCraft in violation of the City of Williamstown, KY Ordinance 2008-17, Defendant Donald Kuester's Motion for Partial Summary Judgment regarding the Williamstown Ordinance (Doc. #21) is **granted**.

### D. Negligence Liability of Mrs. Kuester

In her Motion for Partial Summary Judgment, Plaintiff argues that because there are no genuine issues of material fact as to whether Defendant Cathleen Kuester was negligent in her operation of the Mastercraft on July 3, 2009, she is entitled to summary judgment on her negligence claim against Defendant Cathleen Kuester. While acknowledging that Defendants have identified several factual differences leading up to the tragic accident, Plaintiff argues that these differences are not material for purposes of her summary judgment motion. The Court disagrees.

Under Kentucky law, to prevail on a negligence theory of liability the Plaintiff must establish that: (1) Defendants owed a duty of care to the Plaintiffs; (2) Defendants breached that duty of care; and (3) Defendants' breach was the proximate cause of the Plaintiffs' damages. *James v. Meow Media, Inc.*, 300 F.3d 683, 689 (6th Cir. 2002); *Blust v. Berea College*, 431 F.Supp.2d 703, 704 (E.D. Ky. 2006) *(citing Mullins v. Commonwealth Life Ins.*, 839 S.W.2d 245, 247 (Ky. 1992)).

In addition to pleading common law negligence, Plaintiff alleges Mrs. Kuester violated several Kentucky statutes and regulations and a local city of Williamstown ordinance during her operation of the Mastercraft on July 3, 2009. First, Plaintiff claims the MasterCraft was being illegally operated, in violation of K.R.S. §§ 235.040 and 235.110,

15

because the boat was not properly numbered or registered in Kentucky. Next, Plaintiff asserts Mrs. Kuester's operation of the MasterCraft was in violation of K.R.S. § 235.285(4), which provides, in pertinent part, that a motorboat "shall at all times be operated according to the "Rules of the Road" and in a reasonable and prudent manner so as not to endanger human life, human physical safety, or property." That statute further provides that a motorboat shall not "[f]ollow a watercraft that is towing an individual on water skis ... in a way that endangers human life, human physical safety, or property." K.R.S. § 238.285(4). Additionally, Plaintiff maintains Mrs. Kuester violated several Kentucky administrative regulations, including 301 K.A.R. 6:030 §§ 3(3)(b), 6(1)(a), 6(1)(I), 6(3), 6(5)(b) & (c). These regulations include several waterway safety requirements including: (1) A person shall not operate a boat in a manner which would endanger a person in the water; (2) The operator of a boat overtaking another boat shall yield the right-of-way to the boat being overtaken; (3) The operator of a boat which is required to yield the right-of-way shall slow down, stop, reverse or alter course as necessary; (4) Anytime there is a danger of collision, the operator of a boat shall slow down, stop, reverse or alter course until the danger has passed; and (5) An operator shall maintain complete control of his boat and not exceed a speed which, given existing conditions, could present a hazard to life or safety. 301 K.A.R. 6:030. Finally, Plaintiff alleges Mrs. Kuester violated a local ordinance, City of Williamstown, KY Ordinance 2008-17. This ordinance tracks the language of K.R.S. § 235.285(4).

The common law doctrine of negligence per se has been codified in Kentucky pursuant to K.R.S. § 446.070, which states: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation

... ." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). In order for a violation of a statute or regulation to become negligence per se, plaintiff "must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the [statute or] regulation was designed to prevent." *Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997). Only when both requirements are affirmatively demonstrated is negligence per se established. *Id.* The applicable regulation or statute then defines the relevant standard of care. *Id.* Negligence per se "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008) (*quoting Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 926-27 (Ky. 1994)). Even if a plaintiff can establish that a defendant was negligent per se, the plaintiff must still prove that the violation was a substantial factor in causing the plaintiff's injury. *Britton v. Wooten*, 817 S.W.2d 443, 447 (Ky. 1991).

The aforementioned statute and regulations concern the use of Kentucky's waters and govern the "safe use of all waters...." *See* K.R.S. § 235.280. In this case Mrs. Kuester was operating her Mastercraft boat on Kentucky waters and was therefore subject to the safety requirements set forth in the applicable statute and regulations. Additionally, there is no doubt that K.R.S. § 235.285(4) and the regulations cited herein were enacted to protect persons on the water, such as Plaintiff's decedent, and the decedent's death was certainly an event which the statute and regulations were designed to prevent.

However, Plaintiff must still prove that Mrs. Kuester breached her duty of care, i.e., violated the statute and regulations, and such breach was the proximate cause of decedent's death. In view of the disputed issues of fact concerning the location of the

Celebrity and Mr. Griffith in the water immediately prior to the accident, and what precautionary measures Mrs. Kuester was taking at the time, Plaintiff has failed to show the absence of any material facts that would support a finding of negligence as a matter of law. Based upon a review of the record evidence herein, the Court finds that a genuine issue of material fact exists to whether Mrs. Kuester was operating her boat in compliance with her statutory and regulatory duties. Furthermore, given the conflicting testimony regarding decedent's location in the water immediately prior to the collision, i.e., whether he was pulled a distance of up to ten feet, there is further a genuine issue of material fact as to whether Mrs. Kuester's operation was the proximate cause of the collision and decedent's death. For these reasons, Plaintiff's Motion for Partial Summary Judgment as to Defendant Cathleen Kuester's common law and statutory negligence (Doc. #31) is **denied**.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

1. Defendant Donald Kuester's Motions for Partial Summary Judgment (Docs. #20, 21) are hereby **GRANTED**;

2. Plaintiff's Cross Motion for Partial Summary Judgment (Doc. #28) is hereby **DENIED**;

3. Plaintiff's Motion for Partial Summary Judgment regarding Mrs. Kuester's negligence liability (Doc. #31) is hereby **DENIED**; and

4. The final pretrial conference and trial will be set by subsequent Order.

This 25th day of January, 2011.


Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2-09-159 MOO re MSJs.wpd